## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

LIONEL F. SWAN, an individual,

      Plaintiff,

                                 Case No.

v.

                                 Hon.

WASHTENAW INTERMEDIATE SCHOOL
DISTRICT, a Michigan intermediate school
district, SCOTT A. MENZEL, in his official
capacity, CASSANDRA D. HARMON-HIGGINS,
individually and in her official capacity, ANNE
NAKON, individually and in her official capacity,
and PROFESSIONAL EDUCATIONAL
SERVICES GROUP, LLC, a Michigan limited
liability company,

      Defendants, jointly and severally.

_____/

TISHKOFF & ASSOCIATES PLLC
By: William G. Tishkoff (P45165)
And: Sarah L. Wixson (P76496)
And: William E. Link (P76718)
Attorneys for Plaintiff
407 North Main Street
Ann Arbor, Michigan 48104
(734) 663-4077
will@tishlaw.com
sarah@tishlaw.com
bill@tishlaw.com

_____/

## **COMPLAINT AND JURY DEMAND**

    NOW COMES Plaintiff, Lionel F. Swan, through his attorneys, Tishkoff &

Associates PLLC, and states for his complaint against Defendants Washtenaw

Intermediate School District, Scott A. Menzel, Cassandra D. Harmon-Higgins,

Anne Nakon, and Professional Educational Services Group, LLC:

## **PARTIES**

1.     Plaintiff Lionel F. Swan ("Mr. Swan") is an individual residing in Ann

Arbor, Washtenaw County, Michigan.

2.     Defendant Washtenaw Intermediate School District ("WISD") is a

public educational institution located in Washtenaw County, Michigan.

3.     Defendant Scott A. Menzel ("Mr. Menzel") is an individual who, on

information and belief, resides in Whitmore Lake, Washtenaw County, Michigan.

4.     Defendant Cassandra D. Harmon-Higgins, Esq. ("Ms. Harmon-

Higgins") is an individual who, on information and belief, resides in South Lyon,

Oakland County, Michigan.

5.     Defendant Anne Nakon ("Ms. Nakon") is an individual who, on

information and belief, resides in Ann Arbor, Washtenaw County, Michigan.

6.     Defendant Professional Educational Services Group, LLC ("PESG")

is a Michigan limited liability company with its registered office in Caledonia,

Kent County, Michigan.

7.     Mr. Menzel is the Superintendent of WISD.

8.     Ms. Harmon-Higgins is the Executive Director of Human Resources

and Legal Services for WISD.

2

9.      Ms. Nakon is the Supervisor of High Point School, a public educational institution operated by WISD.

## JURISDICTION AND VENUE

10.     The instant action seeks relief for Defendants' violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended ("Title VII"), the Age Discrimination In Employment Act, 29 U.S.C. 621, *et seq.* (the "ADEA"), 42 U.S.C. § 1983 ("§ 1983"), and the Elliot Larsen Civil Rights Act, MCL 37.280, *et seq*. ("ELCRA").

11.     This Court has federal question jurisdiction over Mr. Swan's Title VII, ADEA, and § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5.

12.     This Court has supplemental jurisdiction over Mr. Swan's ELCRA claims pursuant to 28 U.S.C. § 1367 because Mr. Swan's ELCRA claims are so related to his Title VII, ADEA, and § 1983 claims that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the subject claims occurred in the judicial district of this Court.

14.     Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants' contacts in the judicial district of this Court are sufficient to

3

subject Defendants to this Court's personal jurisdiction and, therefore, Defendants are deemed to reside in the judicial district of this Court pursuant to 28 U.S.C. § 1391(c)(2).

## **GENERAL ALLEGATIONS**

15.   WISD is responsible for providing public education for persons residing in Washtenaw County.

16.   High Point School ("High Point") is a public educational institution located in Washtenaw County and operated by WISD to meet the special needs of students with disabilities.

17.   PESG contracts with WISD to provide substitute teachers at WISD controlled schools, including but not limited to, High Point.

18.   Mr. Swan is a 65 year-old, African-American male.

19.   Mr. Swan earned his Bachelor of Arts degree from Michigan State University in 1993, attended graduate school at Marygrove College between 2001 and 2003, and is qualified to work as a substitute teacher or a para-professional in a special education classroom.

20.   Mr. Swan is a veteran of the Detroit Police Department and spent over 20 years working as an investigator for the State of Michigan.

21.   Mr. Swan began working for PESG as a substitute teacher in 2008.

22.   Mr. Swan excels at working with special needs students.

4

23.     Between 2010 and 2014, in connection with Mr. Swan's employment with PESG, PESG placed Mr. Swan in several WISD locations to work as either a substitute teacher or a para-professional.

24.     Since 2010, Mr. Swan has had exceptional performance reviews from PESG, while primarily working with special needs students, who often exhibited violent behavioral tendencies.

25.     In September 2014, Mr. Swan was placed by PESG at High Point as a permanent substitute para-professional to work in special education classroom C7 ("Room C7").

26.     During Mr. Swan's time working in Room C7, PESG and WISD shared or co-determined the matters governing the essential terms and conditions of Mr. Swan's employment.

27.     The lead teacher in Room C7 is Kristina Jackson ("Ms. Jackson"), a white female under the age of 30.

28.     Room C7 is located in the C-wing at High Point with other special education classrooms.

29.     Teacher assistants and para-professionals working in the C-wing at High Point are assigned to a particular room in the C-wing, but are often called upon to work in rooms other than their assigned room if needed.

5

30.     Mr. Swan often worked in Room C7 with teacher assistants and para-professionals from other rooms within the C-wing at High Point.

31.     Other staff members in the C-wing at High Point who worked with Mr. Swan in Room C7 include, *inter alia*, two white female teacher assistants, both of whom are under the age of 50, and a white male teacher assistant who is under the age of 25.

32.     Shortly after Mr. Swan began working in Room C7, another older African-American male ("Donny"), who was working at High Point and who had previously worked in Room C7, warned Mr. Swan that white staff members in Room C7 and in the C-wing at High Point harbored animus against, and hostility toward, African-American and older males working with them.

33.     Donny told Mr. Swan that white High Point staff members had acted on their animus toward older African-American males working in Room C7 and that said staff members had falsified complaints to High Point administration about Donny to the point that he was removed from Room C7.

34.     Shortly after Mr. Swan began working in Room C7, certain white teacher assistants at High Point began a pattern of animosity, and rude conduct and behavior, toward Mr. Swan because of his race and age.

6

35.    The above white teacher assistants acted on the above animus by making sure that Mr. Swan was assigned to work with the most violent students or only with the African-American students.

36.    The communications and conduct of the above white teacher assistants also showed their above animus and efforts to avoid Mr. Swan working with the white students.

37.    The above white teacher assistants further acted on their above animus by alleging fault with Mr. Swan's work and undermining his relationship with Ms. Jackson, a young white female.

38.    On numerous occasions, Mr. Swan complained to WISD and Ms. Jackson about the above discriminatory behavior toward Mr. Swan exhibited by staff members at High Point.

39.    Despite Mr. Swan's above complaints to WISD and Ms. Jackson, WISD and Ms. Jackson did not address the discriminatory attitude or behavior of certain white staff members at High Point toward Mr. Swan, and the discriminatory and abusive behavior by other staff members continued through the end of 2014 and into January 2015.

40.    In further acting on the above discriminatory animus, and also in retaliation for Mr. Swan's above complaints and protected exercise of his civil

7

rights, on January 30, 2015, WISD and Ms. Nakon, both acting under color of state law, summarily removed Mr. Swan from High Point.

41.     Thereafter, on the same date, January 30, 2015, Mr. Swan complained to WISD and Ms. Nakon that they were discriminating against him because of his race and age, and in retaliation for his protected exercise of his civil rights, that he previously made his civil rights complaints to WISD, and other individuals at High Point had also been the objects of discrimination by WISD because of their race and age.

42.     After Mr. Swan was retaliated against and removed from Room C7, WISD replaced him with a young white male with whom Mr. Swan has comparable skills, experience, background and qualifications.

43.     On February 12, 2015, Mr. Swan sent an email to WISD and Ms. Nakon complaining further regarding the above retaliation and race and age discrimination he was experiencing, and requesting a response to his complaints ("February 12 Email").

44.     The February 12 Email includes Mr. Swan's complaints to WISD and Ms. Nakon that he was experiencing race and age discrimination at WISD, had been warned by an older African-American male who worked at High Point that certain white staff members had not wanted him in Room C7, and white C7 staff members had schemed to have him removed from the room.

8

45.     Mr. Swan also complained to WISD and Ms. Nakon in the February 12 Email that the discriminatory treatment of the above older African-American male was similar to the discriminatory treatment Mr. Swan was receiving by certain white staff members and WISD.  *Id*.

46.     By February 18, 2015, WISD and Ms. Nakon had not responded to Mr. Swan's February 12 email, and Mr. Swan re-sent his February 12 Email ("February 18 Email").

47.     By February 19, 2015, WISD and Ms. Nakon had not responded to Mr. Swan's February 12 email or February 18 Email, and Mr. Swan wrote an email to the Executive Director of Student Services at WISD regarding Mr. Swan's complaints of discrimination and retaliation by WISD ("February 19 Email").

48.     Mr. Swan's February 19 Email included his complaints that his race and age were the reasons for his removal from High Point and that he had previously made his civil rights complaints clear to WISD and Ms. Nakon.

49.     In further acting on the above discriminatory animus, and also in further retaliation for Mr. Swan's above complaints and protected exercise of his civil rights, on February 20, 2015, WISD and Ms. Harmon-Higgins sent an email to PESG and Todd Hobson stating that WISD would no longer utilize Mr. Swan as a substitute teacher for WISD ("February 20 Email").

9

50.     In and with the February 20 Email, WISD referenced for its decision, and attached the February 12 Email and the February 18 Email, concerning Mr. Swan's complaints to WISD regarding race and age discrimination, and retaliation for exercising his civil rights.

51.     WISD and Ms. Harmon-Higgins were acting under color of state law when they acted on their above animus, and in retaliation for Mr. Swan's exercise of his protected civil rights, and advised PESG that WISD would no longer utilize Mr. Swan as a substitute teacher.

52.     In connection with Mr. Swan's above exercise of his civil rights and PESG's receipt of the February 20 Email, although other positions within WISD that Mr. Swan was qualified to take were available, PESG joined WISD and Ms. Harmon-Higgins in acting on the above animus and furthering the above retaliation, and did not assign Mr. Swan to any of the above positions.

53.     On March 3, 2015, in further acting on the above animus and furthering the above retaliation, PESG sent Mr. Swan a letter stating that WISD requested that Mr. Swan be permanently removed from their substitute list and that PESG was honoring WISD's request ("March 3 Letter").

54.     The next day, March 4, 2015, Mr. Swan emailed PESG and Brenda Scott ("Ms. Scott"), informing them that he disagreed with his permanent removal from WISD and he was retaliated against for exercising his civil rights to complain

10

that he was discriminated against on the basis of his race and age ("March 4 Email").

55.     WISD, Ms. Nakon and PESG did not reasonably or appropriately investigate Mr. Swan's above complaints, nor did they undertake prompt corrective measures within their control to address and remedy the subject discrimination and retaliation.

56.     Defendants above acts and omissions caused Mr. Swan to sustain significant injuries and damages, including, *inter alia*:  loss of earnings and earning capacity; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice; and attorney fees, expenses and other damages.

57.     On April 23, 2015, Mr. Swan filed a Charge of Discrimination against WISD/PESG with the United States Equal Employment Opportunity Commission (the "EEOC").

58.     On December 28, 2015, in connection with his above Charge of Discrimination, Mr. Swan received a Notice Of Right To Sue, issued by the EEOC and dated December 15, 2015 ("Right To Sue Notice").  A copy of the Right To Sue Notice is attached as Exhibit A.

## COUNT I

## RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq*.

### [DEFENDANT WISD]

59.     Mr. Swan incorporates herein his above allegations.

60.     Mr. Swan was an employee and WISD was Mr. Swan's employer, covered by and within the meaning of Title VII.

61.     As an African-American male, Mr. Swan was a member of a protected class.

62.     Mr. Swan was qualified for the position of permanent substitute para-professional in a special education classroom.

63.     WISD discriminated against Mr. Swan because of his race by, *inter alia*, treating him with animus as described above, assigning Mr. Swan to work only with the most violent students or only with the African-American students, alleging fault with his work and undermining his relationship with the lead teacher, Ms. Jackson, a young white female.

64.     WISD also, *inter alia*, failed to investigate and/or undertake measures within their control to promptly correct, and/or address the above race discrimination, and Mr. Swan's complaints about race discrimination that he was experiencing at WISD.

12

65.     WISD further discriminated against Mr. Swan because of his race and subjected Mr. Swan to adverse employment actions by removing Mr. Swan from Room C7 and permanently removing Mr. Swan from substitute teaching within WISD, *inter alia*.

66.     WISD replaced Mr. Swan with a person who is not an African-American male.

67.     Mr. Swan's race was a factor that made a difference in WISD's decision to subject Mr. Swan to the wrongful and discriminatory treatment described herein.

68.     As a direct and proximate result of WISD's above acts and violations of Title VII, Mr. Swan sustained injuries and damages, including, *inter alia*:  loss of earnings and earning capacity; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice; and attorney fees, expenses and other damages.

## COUNT II

## RACE AND AGE DISCRIMINATION IN VIOLATION OF THE ELLIOT LARSEN CIVIL RIGHTS ACT, MCL 37.2101, *et seq*.

### [ALL DEFENDANTS]

69.     Mr. Swan incorporates herein his above allegations.

13

70.     Mr. Swan was an employee and Defendants were employers covered by and within the meaning of ELCRA.

71.     As a 65 year old, African-American male, Mr. Swan was a member of classes protected pursuant to ELCRA.

72.     Mr. Swan was qualified for the position of permanent substitute para-professional in a special education classroom.

73.     Defendants discriminated against Mr. Swan because of his race and age by, *inter alia*, treating him with animus as described above, assigning Mr. Swan to work only with the most violent students or only with the African-American students, alleging fault with his work and undermining his relationship with the lead teacher, Ms. Jackson, a young white female.

74.     Defendants also, *inter alia*, failed to investigate and/or undertake measures within their control to promptly correct, and/or address the above race and age discrimination, and Mr. Swan's complaints about race and age discrimination that he was experiencing at WISD.

75.     Defendants further discriminated against Mr. Swan because of his race and age, and subjected Mr. Swan to adverse employment actions by removing Mr. Swan from Room C7 and permanently removing Mr. Swan from substitute teaching within WISD, *inter alia*.

14

76.     Defendants replaced Mr. Swan with a Caucasian person who is under the age of 40.

77.     Mr. Swan's race and age were factors that made a difference in Defendants' decision to subject Mr. Swan to the wrongful and discriminatory treatment described herein.

78.     As a direct and proximate result of Defendants' above acts and violations of the ELCRA, Mr. Swan sustained injuries and damages, including, *inter alia*:  loss of earnings and earning capacity; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice; and attorney fees, expenses and other damages.

## COUNT III

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. § 621, *et seq*.

### [DEFENDANT WISD]

79.     Mr. Swan incorporates herein his above allegations.

80.     Mr. Swan was an employee and WISD was Mr. Swan's employer, covered by and within the meaning of the ADEA.

81.     As a 65 year old, African-American male, Mr. Swan was a member of protected classes.

82.    Mr. Swan was qualified for the position of permanent substitute para-professional in a special education classroom.

83.    WISD discriminated against Mr. Swan because of his age by, *inter alia*, treating him with animus as described above, assigning Mr. Swan to work only with the most violent students, alleging fault with his work and undermining his relationship with the lead teacher, Ms. Jackson, a young white female.

84.    WISD also, *inter alia*, failed to investigate and/or undertake measures within their control to promptly correct, and/or address the above age discrimination, and Mr. Swan's complaints about age discrimination that he was experiencing at WISD.

85.    WISD further discriminated against Mr. Swan because of his age and subjected Mr. Swan to adverse employment actions by removing Mr. Swan from Room C7, and permanently removing Mr. Swan from substitute teaching within WISD, *inter alia*.

86.    WISD replaced Mr. Swan with a person under 40, not protected under the ADEA, with whom Mr. Swan has the comparable skills, experience, background or qualifications.

87.    Mr. Swan's age was a factor that made a difference in WISD'S decision to subject Mr. Swan to the wrongful and discriminatory treatment described herein.

16

88.     As a direct and proximate result of WISD's above acts and violations of the ADEA, Mr. Swan sustained injuries and damages, including, *inter alia*:  loss of earnings and earning capacity; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice; and attorney fees, expenses and other damages.

<u>**COUNT IV**</u>

<u>**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq*.**</u>

**[DEFENDANT WISD]**

89.     Mr. Swan incorporates herein his above allegations.

90.     Mr. Swan was an employee and WISD was Mr. Swan's employer, covered by and within the meaning of Title VII.

91.     As an African-American male, Mr. Swan is a member of a protected class.

92.     WISD retaliated against Mr. Swan by, *inter alia*, removing Mr. Swan from doing a job that he was qualified to do in Room C7 and by permanently removing Mr. Swan from WISD for his discrimination complaints and his exercise of his civil rights protected by Title VII.

93.     Mr. Swan engaged in protective activity by, *inter alia*, making numerous complaints to WISD that he was experiencing race discrimination and complaining to WISD and Ms. Nakon, at the January 30 Meeting and through his emails sent on February 12, 18, and 19, 2015, that he was experiencing race discrimination.

94.     WISD knew about Mr. Swan's above discrimination complaints.

95.     WISD took action adverse to Mr. Swan by, *inter alia*, removing Mr. Swan from Room C7, instructing PESG to permanently remove Mr. Swan from the WISD substitute teacher list, combining with PESG to permanently remove Mr. Swan from the WISD substitute teacher list, and failing to take corrective action regarding the race discrimination experienced by Mr. Swan at WISD.

96.     There is a causal connection between the above protective activity engaged in by Mr. Swan and the above adverse action taken by WISD.

97.     As a direct and proximate result of WISD's above acts and violations of Title VII, Mr. Swan sustained injuries and damages, including, *inter alia*:  loss of earnings and earning capacity; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice; and attorney fees, expenses and other damages.

## COUNT V

## RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT 29 U.S.C. § 621, *et seq.*

### [DEFENDANT WISD]

98.    Mr. Swan incorporates herein his above allegations.

99.    Mr. Swan was an employee and WISD was Mr. Swan's employer, covered by and within the meaning of the ADEA.

100.   As a 65 year old, African-American male, Mr. Swan was a member of protected classes.

101.   WISD retaliated against Mr. Swan by, *inter alia*, removing Mr. Swan from doing a job that he was qualified to do in Room C7 and by permanently removing Mr. Swan from WISD for his discrimination complaints and his exercise of his civil rights protected by ADEA.

102.   Mr. Swan engaged in protective activity by, *inter alia*, making numerous complaints to WISD that he was experiencing age discrimination and complaining to WISD and Ms. Nakon, at the January 30 Meeting and through his emails sent on February 12, 18, and 19, 2015, that he was experiencing discrimination.

103.   WISD knew about Mr. Swan's above discrimination complaints.

19

104.    WISD took action adverse to Mr. Swan by, *inter alia*, removing Mr. Swan from Room C7, instructing PESG to permanently remove Mr. Swan from the WISD substitute teacher list, combining with PESG to permanently remove Mr. Swan from the WISD substitute teacher list, and failing to take corrective action regarding the race discrimination experienced by Mr. Swan at WISD.

105.    There is a causal connection between the above protective activity engaged in by Mr. Swan and the above adverse action taken by the WISD.

106.    As a direct and proximate result of WISD's and above acts and violations of the ADEA, Mr. Swan sustained injuries and damages, including, *inter alia*, loss of earnings and earning capacity; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice; and attorney fees, expenses and other damages.

## COUNT VI

## RETALIATION IN VIOLATION OF THE ELLIOT LARSEN CIVIL RIGHTS ACT, MCL 37.2101, *et seq.*

### [ALL DEFENDANTS]

107.    Mr. Swan incorporates herein his above allegations.

108.    Mr. Swan was an employee and Defendants were Mr. Swan's employers, covered by and within the meaning of the ELCRA.

20

109.   As a 65 year-old, African-American male, Mr. Swan was a member of protected classes.

110.   Defendants retaliated against Mr. Swan by, *inter alia*, removing Mr. Swan from doing a job that he was qualified to do in Room C7 and by permanently removing Mr. Swan from WISD for his discrimination complaints and his exercise of his civil rights protected by ELCRA.

111.   Mr. Swan engaged in protective activity by, *inter alia*, making numerous complaints to WISD that he was experiencing race and age discrimination and complaining to WISD and Ms. Nakon, at the January 30 Meeting and through his emails sent on February 12, 18, and 19, 2015, that he was experiencing race and age discrimination, and complaining to PESG on March 4, 2015 that he was experiencing race and age discrimination.

112.   Defendants knew about Mr. Swan's above discrimination complaints.

113.   Defendants took action adverse to Mr. Swan by, *inter alia*, removing him from Room C7, permanently removing Mr. Swan from the WISD substitute teacher list, and failing to take corrective action regarding the race and age discrimination experienced by Mr. Swan.

114.   There is a causal connection between the above protective activity engaged in by Mr. Swan and the above adverse action taken by the Defendants.

115.   As a direct and proximate result of Defendants' above acts and violations of ELCRA, Mr. Swan sustained injuries and damages, including, *inter alia*:  loss of earnings and earning capacity; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice; and attorney fees, expenses and other damages.

## COUNT VII

## VIOLATION OF 42 U.S.C. § 1983

### [DEFENDANTS WISD, SCOTT A. MENZEL, CASSANDRA D. HARMON-HIGGINS, ANNE NAKON]

116.   Mr. Swan incorporates herein his above allegations.

117.   The above actions, *inter alia*, by WISD and Scott A. Menzel, Cassandra D. Harmon-Higgins, and Anne Nakon (the "Individual Defendants"), both officially as employees of WISD and as individuals, acting under color of state law but without legislative or governmental authority, were unreasonable and capricious, and intentionally deprived Mr. Swan of his constitutional rights and privileges, as secured by the First and Fourteenth Amendments to the United States Constitution.

22

118.   Mr. Swan engaged in conduct protected by the U.S. Constitution when, *inter alia*, he complained to WISD and the Individual Defendants, *inter alia,* about the race and age discrimination that he was experiencing.

119.   WISD and the Individual Defendants materially participated in the removal of Mr. Swan from High Point, and permanently removing Mr. Swan from the substitute teacher list for WISD, because Mr. Swan engaged in the above protected conduct.

120.   WISD's and the Individual Defendants' material participation in the removal of Mr. Swan from High Point and permanent removal from the substitute teacher list for WISD was motivated, at least in part, by Mr. Swan's engagement in the above protected conduct, *inter alia*.

121.   WISD's and the Individual Defendants' material participation in the removal of Mr. Swan from High Point and permanent removal from the substitute teacher list for WISD would deter a person of ordinary firmness from engaging in conduct protected by the U.S. Constitution, including but not limited to, complaining about matters of public concern and complaining about race and age discrimination at WISD, *inter alia*.

122.   WISD and the Individual Defendants have, *inter alia*, deprived Mr. Swan of his right to free expression in violation of the Free Speech Clause of the First Amendment of the U.S. Constitution as applied to the States and their

23

political subdivisions under the Fourteenth Amendment to the United States Constitution and §1983.

123.   The above actions by WISD and the Individual Defendants also deprived Mr. Swan of his constitutional rights and privileges under the Equal Protection Clause of the Fourteenth Amendment by, *inter alia*, acting irrationally, arbitrarily and with vindictiveness, singling Mr. Swan out for unfair treatment, acting out of sheer malice in their treatment of Mr. Swan, for reasons wholly unrelated to any legitimate state objective, and in refusing to provide equal protection of the law to Mr. Swan.

124.   As a direct and proximate result of Defendant WISD's and the Individual Defendants' above acts and violations of §1983, and acts under the color of state law depriving Mr. Swan of his constitutional rights, Mr. Swan sustained injuries and damages, including, *inter alia*:  loss of earnings and earning capacity; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice; and attorney fees, expenses and other damages.

## COUNT VIII

## CIVIL CONSPIRACY

## [DEFENDANTS PESG, WISD, CASSANDRA D. HARMON-HIGGINS]

125.   Mr. Swan incorporates herein his above allegations.

126.   PESG, WISD and Ms. Harmon-Higgins illegally, maliciously, and wrongfully conspired and combined with one another with the intent to, and for the illegal purpose of intentionally, *inter alia*, depriving Mr. Swan of his constitutional rights and privileges, as secured by the First and Fourteenth Amendments to the United States Constitution.

127.   PESG, WISD and Ms. Harmon-Higgins, in agreement and in combination, conspired to permanently remove Mr. Swan from the substitute teacher list for WISD in retaliation for, *inter alia*, Mr. Swan's complaints regarding race and age discrimination that he was experiencing at WISD, which complaints are protected by the U.S. Constitution.

128.   The above conspiracy and combination resulted in the illegal, unlawful, or tortious activity of PESG, WISD and Ms. Harmon-Higgins, including the permanent removal of Mr. Swan from the substitute teacher list for WISD in retaliation for, *inter alia*, Mr. Swan's complaints regarding race and age discrimination that he was experiencing at WISD, which complaints are protected by the U.S. Constitution.

129.   PESG, WISD and Ms. Harmon-Higgins, acting in conspiracy and combination, *inter alia*, deprived Mr. Swan of his right to free expression in violation of the Free Speech Clause of the First Amendment of the U.S. Constitution as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution and §1983.

130.   The above actions by PESG, WISD and Ms. Harmon-Higgins, in conspiracy and combination, also deprived Mr. Swan of his constitutional rights and privileges under the Equal Protection Clause of the Fourteenth Amendment by, *inter alia*, acting irrationally, arbitrarily and with vindictiveness, singling Mr. Swan out for unfair treatment, acting out of sheer malice in its treatment of Mr. Swan, for reasons wholly unrelated to any legitimate state objective, and in refusing to provide equal protection of the law to Mr. Swan.

131.   As a direct and proximate result of PESG's, WISD's and Ms. Harmon-Higgins' above acts and violations of the U.S. Constitution, in conspiracy and combination, Mr. Swan sustained injuries and damages, including, *inter alia*: loss of earnings and earning capacity; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice; and attorney fees, expenses and other damages

WHEREFORE, Plaintiff, Lionel F. Swan, respectfully requests that this Court enter a judgment against Defendants, providing the following relief:

A.      Awarding Mr. Swan his actual, consequential, and compensatory damages, in excess of $500,000.00, including his economic and noneconomic damages, including, but not limited to, loss of earnings and earning capacity; loss of employment benefits; loss of career opportunities; mental and emotional distress; humiliation and embarrassment; loss of the ordinary pleasure of everyday life, including the right to seek and pursue a gainful occupation of choice;

B.      Awarding Mr. Swan damages and relief as allowed by applicable statute, court rule or common law, including any punitive, liquidated, and exemplary damages;

C.      Awarding Mr. Swan costs, attorney fees, and interest;

D.      Entering an injunctive order placing Mr. Swan in the position he would have held had there been no violation of his rights;

E.      Entering an injunction restraining Defendants from further acts of discrimination and retaliation; and

27

      F.     Awarding such other relief as this Court deems just and equitable.

                                       Respectfully submitted,

                                       Tishkoff & Associates PLLC

                                       /s/ William E. Link
                                       By: William G. Tishkoff (P45165)
                                       And: Sarah L. Wixson (P76496)
                                       And: William E. Link (P76718)
                                       Attorneys for Plaintiff
                                       407 North Main Street
                                       Ann Arbor, Michigan 48104
                                       (734) 663-4077
                                       bill@tishlaw.com
                                       February 3, 2016

## <u>JURY DEMAND</u>

NOW COMES Plaintiff, Lionel F. Swan, through his attorneys, Tishkoff & Associates PLLC, and hereby demands a trial by jury of all triable issues in the above matter.

Respectfully submitted,

Tishkoff & Associates PLLC

/s/ William E. Link
By: William G. Tishkoff (P45165)
And: Sarah L. Wixson (P76496)
And: William E. Link (P76718)
Attorneys for Plaintiff
407 North Main Street
Ann Arbor, Michigan 48104
(734) 663-4077
bill@tishlaw.com
February 3, 2016